IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WALTER RICHARDSON, | ) |
| Petitioner, | ) ) ) |
| v. | ) ) Case No. 21-CV-0462-GKF-SH |
| CARRIE BRIDGES,[1] | ) ) ) |
| Respondent. | ) ) |

**OPINION AND ORDER**

Petitioner Walter Richardson, a self-represented Oklahoma prisoner,[2] petitions for a writ of habeas corpus, under 28 U.S.C. § 2254. He contends, for two reasons, that he is unlawfully detained under the criminal judgment entered against him in Tulsa County District Court Case No. CF-1993-5293. First, he claims the State of Oklahoma lacked jurisdiction to prosecute him for crimes he committed in Indian country. Second, he claims the state courts denied him due process and acted contrary to federal law when they denied his request for postconviction relief as to the Indian country jurisdiction claim. Respondent opposes the Petition, asserting that Richardson did not file it within the one-year limitations period prescribed in 28 U.S.C. § 2244(d)(1). Having considered the Petition (Dkt. 1), the Response (Dkt. 7), the Reply (Dkt. 8), the record of state court proceedings, and applicable law, the Court denies the Petition.

---

[1] Richardson presently is imprisoned at the James Crabtree Correctional Center ("JCCC") in Helena, Oklahoma. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes the JCCC's current warden, Carrie Bridges, in place of the JCCC's former warden, Scott Nunn, as party Respondent. The Clerk of Court shall note on the record this substitution.

[2] Because Richardson appears without counsel, the Court must liberally construe his pleadings but may not act as his advocate. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

I.

In 1994, a Tulsa County jury found Richardson guilty of robbery with a dangerous weapon, assault and battery with intent to kill, and kidnapping, all after former conviction of two or more felonies. Dkt. 7-1, at 1; Dkt. 7-3, at 5.[3] The jury recommended prison terms of 75 years, 101 years, and 75 years. Dkt. 7-1, at 1. The trial court sentenced Richardson accordingly and ordered all terms to be served consecutively. *Id.* Richardson timely appealed, and the Oklahoma Court of Criminal Appeals ("OCCA") affirmed his judgment in March 1996. *Id.* The OCCA denied Richardson's petition for rehearing in May 1996. Dkt. 7-2. Richardson did not seek further direct review of his judgment by filing a petition for certiorari in the Supreme Court of the United States. Dkt. 1, at 3. In 1997, Richardson filed two applications for postconviction relief in state district court, the state district court denied both applications, and the OCCA dismissed as untimely Richardson's attempt to file a postconviction appeal challenging the orders denying both applications. Dkt. 7-3, at 8-9; Dkts. 7-4, 7-5. In 1998, Richardson filed a third application, the state district court denied it, and Richardson filed a notice of appeal but did not perfect a postconviction appeal. Dkt. 7-3, at 9.

Over two decades later, in July 2020, the Supreme Court issued two decisions relevant to Richardson's Indian country jurisdiction claim: *McGirt v. Oklahoma*, 591 U.S. 894 (2020), and *Sharp v. Murphy*, 591 U.S. 977 (2020) (Mem.). The prisoner in *McGirt* claimed that because he is Indian, the State of Oklahoma lacked authority to prosecute him for serious offenses he committed within the boundaries of the Muscogee (Creek) Nation Reservation. *McGirt*, 591 U.S. at 898. The *McGirt* Court held that because Congress did not disestablish the Muscogee (Creek) Nation Reservation the land within the historical boundaries of that reservation is "Indian country,"

---

[3] For consistency, the Court's citations refer to the CM/ECF header pagination.

as defined in 18 U.S.C. § 1151(a), and, as a result, the federal government has exclusive jurisdiction, under 18 U.S.C. § 1153, to prosecute Indians for committing certain crimes within the boundaries of that reservation. *McGirt*, 591 U.S. at 913, 932-34. Relying on *McGirt*, the Supreme Court in *Murphy* summarily affirmed the United States Court of Appeals for the Tenth Circuit's 2017 decision that had reached the same conclusions regarding the continued existence of the Muscogee (Creek) Nation Reservation and the exclusivity of federal jurisdiction as to certain crimes committed within that reservation by Indians. *Murphy*, 591 U.S. at 977; *see Murphy v. Royal*, 875 F.3d 896, 937-38 (10th Cir. 2017). The Supreme Court did not consider whether Congress had ever disestablished the Cherokee Nation Reservation. *See McGirt*, 591 U.S. at 932 ("Each tribe's treaties must be considered on their own terms, and the only question before us concerns the Creek."). The OCCA, however, addressed that issue in March 2021 when it affirmed a state district court's ruling that applied "*McGirt* to determine that Congress did establish a Cherokee Reservation and that no evidence was presented showing that Congress explicitly erased or disestablished the boundaries of the Cherokee Reservation." *Hogner v. State*, 500 P.3d 629, 635 (Okla. Crim. App. 2021), *overruled on other grounds by Deo v. Parish*, 541 P.3d 833 (Okla. Crim. App. 2023).

In April 2021, just over one month after the *Hogner* decision, Richardson filed a fourth application for postconviction relief claiming, for the first time, that the State lacked jurisdiction to prosecute him for crimes he committed within the boundaries of the Muscogee (Creek) Nation Reservation. Dkt. 7-6, at 3. Describing himself as "a non-Indian," Richardson argued that the combined effect of the United States Constitution's Supremacy Clause, certain treaties between the United States and the Muscogee (Creek) Nation, and 18 U.S.C. § 1153 deprived the State of "jurisdiction to prosecute any offense involving an Indian when that offense occurs in Indian

3

Count[r]y." *Id.* at 3-4, 7. Richardson also cited the Tenth Circuit's *Murphy* decision and *McGirt* to support his claim. *Id.* at 5. The state district court construed Richardson's fourth application as asserting a *McGirt*-based claim and promptly denied the application. Dkt. 7-7. The state district court reasoned, in part, that Richardson "failed to offer any proof that he is an 'Indian' for purposes of invoking an exception to state jurisdiction" because he did not present "any affirmative evidence that he has any significant degree of Indian blood and that he is recognized as an Indian by the federal government or by some tribe or society of Indians." *Id.* at 2 (citing *Goforth v. State*, 644 P.2d 114 (Okla. Crim. App. 1982)).[4]

Richardson filed a postconviction appeal, identifying the claim he presented to the state district court as: "The trial court lacked jurisdiction because treaties between the Muscogee Creek Nation and United States reserves jurisdiction to the Tribe." Dkt. 7-8, at 1. In September 2021, the OCCA affirmed the denial of Richardson's fourth application for postconviction relief based on its then recent decision in *State ex rel. Matloff v. Wallace*, 497 P.3d 686 (Okla. Crim. App. 2021) ("*Wallace*"). In *Wallace*, the OCCA reaffirmed several post-*McGirt* decisions recognizing the existence of reservations in Oklahoma, including its decision in *Hogner*, but held "that *McGirt* and [the OCCA's] post-*McGirt* decisions recognizing these reservations shall not apply retroactively to void a conviction that was final when *McGirt* was decided." *Wallace*, 497 P.3d at 689. Applying *Wallace*, the OCCA reasoned that the state district court appropriately denied

---

[4] In *Goforth*, the OCCA explained that a person is an Indian under federal law if he or she "has a significant percentage of Indian blood" and is "recognized as an Indian either by the federal government or by some tribe or society of Indians." 644 P.2d at 116 (citing *United States v. Rogers*, 45 U.S. (4 How.) 567 (1846)); *accord United States v. Prentiss*, 273 F.3d 1277, 1280 (10th Cir. 2001) ("We have concluded that, '[f]or a criminal defendant to be subject to [federal prosecution under 18 U.S.C.] § 1153, the court must make factual findings that the defendant "(1) has some Indian blood; and (2) is recognized as an Indian by a tribe or by the federal government."'" (quoting *Scrivner v. Tansy*, 68 F.3d 1234, 1241 (10th Cir. 1995))).

4

postconviction relief because Richardson's judgment was final before *McGirt* was decided. Dkt. 7-9.

Richardson now seeks federal habeas relief on two grounds. First, he claims the State lacked jurisdiction to prosecute him for crimes he committed in Indian country "because of provisions in treaties between Cherokee Nation and the United States." Dkt. 1, at 5. In support of this claim, Richardson alleges:

> Article 5 of the 1835 Treaty of New Echota (7 Stat 478) and Articles 2, 12 and 13 of the 1866 Treaty of Washington (14 Stat 799) reserves exclusive jurisdiction over all civil and criminal cases that occur/arise within the boundaries of Cherokee Nation reservation to Cherokee Nation. Oklahoma concedes that the crimes occurred within Muscogee or Cherokee Nation boundaries [see also Article 14 of 1832 Muscogee Treaty, 7 Stat366, Article 10 of 1866 Muscogee Treaty, 14 stat 785][.]

*Id.* Second, he claims the "[d]enial of postconviction relief was contrary to clearly established law and unconstitutional." *Id.* at 7. In support of this claim, Richardson alleges he was denied postconviction relief "because his conviction was final" before *McGirt* and *Hogner* were decided.[5] *Id.* In the section of the Petition that asks Richardson to explain why the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1) does not bar relief, Richardson states, "The factual predicate of my claim was established in *McGirt v. Oklahoma* (2020) and its Oklahoma progeny *Hogner v. State* (2021)." *Id.* at 13.

As directed by the Court, Respondent filed a limited response addressing a seemingly obvious procedural bar—the one-year statute of limitations. Dkts. 5, 7. Respondent contends the Petition is untimely and urges the Court to dismiss the Petition. Dkt. 7. In his Reply, Richardson contends the Petition is timely under 28 U.S.C. § 2244(d)(1)(D) or should be deemed timely

---

[5] With his Petition, Richardson submitted an exhibit identified as a "Brief in Support of Petition in Error" that appears to further develop Richardson's arguments as to both claims he identifies in the Petition. Dkt. 1-1.

5

through the doctrine of equitable tolling.  Dkt. 8.

## II.

A federal court may grant federal habeas relief to a state prisoner only if that prisoner shows that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  "To ensure that federal habeas corpus retains its narrow role, [the Antiterrorism and Effective Death Penalty Act ("AEDPA")] imposes several limits on habeas relief, and [the United States Supreme Court] ha[s] prescribed several more." *Shinn v. Ramirez*, 596 U.S. 366, 377 (2022).  "And even if a prisoner overcomes all of these limits, he is never entitled to habeas relief.  He must still 'persuade a federal habeas court that law and justice require [it]." *Id.* (alteration in original) (quoting *Brown v. Davenport*, 596 U.S. 118, 134 (2022)).  On the record presented, the Court finds and concludes, for two reasons, that that law and justice do not require habeas relief.

### A.

First, as Respondent contends, the statute of limitations bars habeas relief, and Richardson has not shown that the Petition could be deemed timely through equitable tolling.  State prisoners seeking federal habeas relief under 28 U.S.C. § 2254 have one year from the latest of four events to file a petition:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented

could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). For most prisoners the limitations period runs from the date the judgment became "final" under § 2244(d)(1)(A). *Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000). The plain text of § 2244(d)(1)(A) provides that a state-court judgment is "final" when the petitioner can no longer seek direct review of that judgment. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). And the prisoner bears the burden of showing that a different provision applies. *Preston*, 234 F.3d at 1120.

Richardson argues that the Petition is timely under § 2244(d)(1)(D) because he could not have discovered the factual predicate of his Indian country jurisdiction claim until *McGirt* was decided in 2020. Dkt. 1, at 13; Dkt. 8, at 1-2. The Court rejects this argument. Under § 2244(d)(1)(D), the limitations period "begins on the date that a reasonably diligent petitioner could have discovered the *factual* basis of his or her claims, not the date that a particular petitioner discovers the *legal* basis of his or her claims." *Owens v. Whitten*, 637 F. Supp. 3d 1245, 1252 (N.D. Okla. 2022) (emphases in original); *see also Madrid v. Wilson*, 590 F. App'x 773, 776 (10th Cir. 2014) (unpublished)[6] (explaining that § 2244(d)(1)(D)'s reasonable-diligence requirement is "an 'objective standard' that refers to when a plaintiff 'could have' discovered the pertinent facts, not when she [or he] actually discovered them" (quoting *United States v. Denny*, 694 F.3d 1185, 1189 (10th Cir. 2012))). Moreover, case law in this circuit "make[s] clear" that "the one-year limitations period set out in § 2244(d)(1)(A), rather than the ones set out in § 2244(d)(1)(C) and/or

---

[6] The Court cites this unpublished decision, and other unpublished decisions herein, as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

(D), applies to *McGirt*-based challenges to the validity of state convictions." *Owens v. Whitten*, No. 22-5106, 2022 WL 17972141, at *1 (10th Cir. Dec. 28, 2022) (unpublished).[7]

The Court thus considers only whether the petition is timely under § 2244(d)(1)(A) and concludes that it is not. Richardson's judgment became final on August 19, 1996, ninety days after the OCCA denied his petition for rehearing, when the time expired for him to seek further direct review. *Gonzalez*, 565 U.S. at 150; *see* Sup. Ct. R. 13.3 (providing that 90-day period to file petition for writ of certiorari "runs from the date of the denial for rehearing").[8] His one-year limitations period began to run the next day, August 20, 1996, and, absent any tolling events, would have expired one year later, August 20, 1997. *Harris v. Dinwiddie*, 642 F.3d 902, 906 n.6 (10th Cir. 2011). Section 2244(d)(1)(A) bars relief absent statutory or equitable tolling.

As Respondent contends, the Petition is untimely even with the benefit of statutory tolling. The one-year limitations period is tolled during the time that the petitioner's properly filed application for state postconviction relief or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2); *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006). But the petitioner must file the application for state postconviction relief or other collateral review before the applicable one-year limitation period expires. *Clark*, 468 F.3d at 714. And the petitioner must properly file the application; this means, the petitioner must comply with applicable state procedural rules. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *see also Habteselassie v. Novak*, 209 F.3d

---

[7] To the extent Richardson's arguments could be construed as suggesting his first claim is treaty-based, not *McGirt*-based, his clear statements in the petition referring to *McGirt* and *Hogner*, as well as the timing of his fourth application for postconviction relief, undermine any argument that his claim is not based on *McGirt*.

[8] The ninety-day period expired on August 18, 1996, a Sunday. Richardson thus had until Monday, August 19, 1996, to petition the Supreme Court for a writ of certiorari. Fed. R. Civ. P. 6(a)(1)(C).

8

1208, 1212 (10th Cir. 2000) (interpreting "the phrase 'properly filed'" as used in § 2244(d)(2), "to apply only to filing requirements" that must be met before the state court accepts an application for filing, rather than affirmative defenses that might be invoked to argue that a particular claim raised in the application is procedurally barred). Richardson filed his first and second applications for postconviction relief within his one-year limitations period, filing the first on April 11, 1997, and the second on May 6, 1997. Dkt. 7-3, at 8. The state district court denied the first application on June 13, 1997, and denied the second application on July 14, 1997. *Id.* at 9. The OCCA construed the postconviction appeal Richardson filed in August 1997 as seeking review of the two state district court orders denying those applications. Dkt. 7-5. But the OCCA declined to exercise jurisdiction over the postconviction appeal and dismissed the appeal in December 1997, concluding that it was not timely filed under state procedural rules. *Id.* On these facts, and because the OCCA dismissed his postconviction appeal as untimely, Richardson is entitled to 125 days of statutory tolling for the period between April 11, 1997, when he filed the first application, through August 14, 1997, when the time expired for him to perfect a timely postconviction appeal in compliance with state law. *See Robinson v. Golder*, 443 F.3d 718, 720 (10th Cir. 2006) (holding that a state postconviction application is "properly filed" for tolling purposes "if it satisfies the State's requirements for filing such a pleading"). Richardson thus had until roughly the end of December 1997 to file a timely federal habeas petition. He filed the instant petition in October 2021, more than twenty years after his limitations period expired.[9]

Richardson nonetheless argues that he is entitled to equitable tolling of the limitations

---

[9] It may seem unfair to conclude that Richardson should have filed his habeas petition in December 1997 when he did not know until that same month that the OCCA would dismiss his postconviction appeal as untimely. But even assuming additional statutory tolling of the limitations period could be available from August 14, 1997, through December 9, 1997, those additional 118 days would not render Richardson's decades-late petition timely.

9

period. To obtain equitable tolling, a petitioner must show that he "diligently pursue[d] his claims and . . . that the failure to timely file [a federal habeas petition] was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). Richardson does not make either showing. He contends equitable tolling is warranted "because of the extraordinary general misunderstanding between federal authorities as to whether any reservations continued to exist in Oklahoma" which "was not cleared up until the *McGirt* decision" was issued in 2020. Dkt. 8, at 1-2. He also alleges he "diligently pursued his jurisdictional claims from the moment that [the] Tenth Circuit Court of Appeals" issued its 2017 *Murphy* decision and that he sought postconviction relief "within months of the *McGirt* ruling." *Id.* at 2. To the extent these contentions could be construed as suggesting that the Supreme Court's decision in *McGirt* created an extraordinary circumstance warranting equitable tolling for petitioners raising *McGirt*-based claims, this court has previously rejected that argument. *See, e.g.*, *Rowbotham v. Nunn*, Case No. 22-CV-0011-JFH-SH, 2022 WL 1523195, at *3 (N.D. Okla. May 13, 2022) (unpublished) ("Even accepting that *McGirt* significantly altered the understanding of the allocation of criminal jurisdiction in Oklahoma, applying equitable tolling in this situation would effectively turn the doctrine of equitable tolling into a judicially-created equitable exception to § 2244(d)(1)'s one-year statute of limitations for all Oklahoma prisoners who were purportedly tried by a state court that lacked criminal jurisdiction. This would be contrary to the well-established principle that 'equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs.'" (footnote omitted) (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007))). The record of state court proceedings also belies Richardson's assertion of diligence as he filed his fourth application for postconviction relief just over nine months after *McGirt* was decided. The Court thus finds equitable tolling is not warranted.

**B.**

Second, even if the statute of limitations did not present a plain procedural bar precluding habeas relief, the Court finds that neither claim Richardson identifies warrants federal habeas relief. The Indian country jurisdiction claim lacks merit because Richardson candidly admitted in state court that he is not Indian, and the state district court found that Richardson is not Indian for purposes of federal law. Dkt. 7-6, at 3, 7; Dkt. 7-7, at 2. In *Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022), the Supreme Court: (1) held that "the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country," *id.* at 633; and (2) reaffirmed that "[s]tates have jurisdiction to prosecute crimes committed by non-Indians against non-Indians in Indian country," *id.* at 637 (citing *United States v. McBratney*, 104 U.S. 621 (1882)). Regardless of whether Richardson's first claim relies on *McGirt* or relies on treaties between the United States and either the Cherokee Nation or the Muscogee (Creek) Nation (or both), *Castro-Huerta* precludes relief because Richardson is not Indian.

Richardson's second claim appears to allege that the OCCA denied him due process when it applied *Wallace* to affirm the denial of his fourth application for postconviction relief. But Richardson is incarcerated under the criminal judgment that was entered against him in 1994, not because the OCCA denied his fourth application for postconviction relief in 2021. Because his second claim "focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim." *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998).

Even disregarding the untimeliness of the Petition, the Court would deny habeas relief for these reasons.

### III.

Based on the foregoing discussion, the Court concludes that the applicable statute of limitations bars Richardson's request for federal habeas relief. The Court further concludes that Richardson's first claim challenging the State's exercise of criminal jurisdiction in Indian country lacks merit because he is not Indian, and his second claim challenging the denial of his request for postconviction relief does not present a cognizable habeas claim. For these reasons, the Court denies the Petition. And because the statute of limitations presents a plain procedural bar that precludes relief as to both claims, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS THEREFORE ORDERED** that the Petition for Writ of Habeas Corpus (Dkt. 1) is **denied**; a certificate of appealability is **denied**; and a separate judgment shall be entered in this matter.

**IT IS FURTHER ORDERED** that the Clerk of Court shall note the substitution of the JCCC's current warden, Carrie Bridges, in place of the JCCC's former warden, Scott Nunn, as party Respondent.

**DATED** this 24th day of October, 2024.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE